# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MICHAEL MYSHKA,
     Plaintiff,

     v.

CITY OF NEW LONDON FIRE DEPT.,
     Defendant.

No. 3:08cv1835 (SRU)

## RULING ON MOTION FOR SUMMARY JUDGMENT

Michael Myshka sued the City of New London Fire Department ("NLFD") alleging

disability discrimination in violation of the Americans with Disabilities Act of 1990, as amended,

42 U.S.C. § 12101, *et seq.* ("ADA"), the Rehabilitation Act of 1973, as amended, 29 U.S.C. §

701, *et seq.* ("Rehabilitation Act"), and the Connecticut Fair Employment Practices Act, as

amended, Conn. Gen. Stat. § 46a-60, *et seq.* ("CFEPA").  The NLFD moved for summary

judgment (**doc. # 19**) on all claims.  For the reasons that follow, that motion is **GRANTED**.

## I.    Background

Michael Myshka was appointed to the position of Firefighter[1] by City of New London

Fire Department ("NLFD") effective March 27, 1989.[2]  (Pl. Opp. Mem. to Def. Mot. for Summ.

---

[1]  The NLFD frequently refers to Myshka's position as "Firefighter/EMT" in its papers.
The official job description submitted by the NLFD, however, refers to the position as
"Firefighter."  (R. Samul Aff., July 31, 2009, ¶ 3, Attachment.)  I adopt the official term.  I note
that the description of the "Firefighter" position states that Firefighters must receive an
Emergency Medical Technician's certificate from the State Office of Emergency Medical
Services within two years of appointment.  (*Id.* at 2.)

[2]  The record shows that, prior to being hired as a Firefighter in 1989, Myshka had two
arrests for driving while intoxicated.  (Pl. Resp. to Interrogs. ¶ 18.)  I presume those arrests
resulted in convictions because each resulted in a license suspension:  in 1982, Myshka was
ordered to take four alcohol education classes and his license was suspended for six months; in
1985, he was fined between $300 and $500 and lost his driver's license for one year.  (*Id.*)
The official job description of "Firefighter" submitted by the NLFD states that possession

J., doc. # 23, hereinafter "Pl. Mem.," Ex. 1, Response ¶ 4.)  Since that date, he worked in the

same role and received accolades for his performance.  (Pl. Mem., Ex. 3 (including letters of

commendation dated January 2, 1992, February 1, 1995, August 24, 2004, January 6, 2005, and

June 7, 2007 and a citation award dated May 26, 2002).)  His job duties included:  responding to

calls involving fires; rescue and medical emergencies; operating and maintaining fire

suppression, medical response, and rescue equipment; applying life-saving support to injured

persons; fighting fires; and operating ambulances and other emergency response vehicles.  (R.

Samul Aff., July 31, 2009, ¶ 3 & Attachment; Pl. Resp. to Interrogs., ¶ 12.)

Myshka stated he consumed alcohol for almost forty years and that for the last twenty-

four years he had consumed alcohol every day.  (Pl. Resp. to Interrogs., ¶ 9.)  He "began drinking

upon waking up in the morning and continued to drink throughout the day."  (*Id.*)  He consumed

approximately sixty cans of beer and four pints of liquor per week; the quantity was alternately

described as six to ten bottles of beer and six double shots of liquor every day.  (*Id.* ¶ 9, 11.)  He

never consumed alcohol during work hours.  (*Id.* ¶ 11.)  In 1992, Myshka was arrested for DWI

and participated in four one-hour counseling sessions.  (*Id.* ¶ 6.)

Myshka admitted to the following facts regarding his arrest.  (Pl. Resp. to Req. for

Admissions.)  He was arrested on October 11, 2007 at approximately 4:55 p.m. for driving under

---

of a valid State of Connecticut vehicle licenses is a requirement for employment, and that
persons who have a criminal record are ineligible for the position.  (R. Samul Aff., July 31, 2009,
¶ 3, Attachment.)  At the summary judgment stage, I must infer that the NLFD was aware of
Myshka's prior convictions and his prior license suspensions when he applied for the job of
Firefighter and that the NLFD nevertheless found him qualified to be hired.

Myshka's license was suspended for one year in 1992 in connection with an alcohol arrest
or citation but he has not provided any narrative or details about that arrest or citation.  (Pl. Resp.
to Interrogs. ¶ 19.)

the influence and failing to stay in an established lane.  (*Id.* ¶ 1.)  The first test of blood alcohol

content ("BAC") preformed on Myshka that same day at approximately 5:42 p.m. registered a

positive result of .168 (*id.* ¶ 2), and the second test at approximately 6:15 p.m. registered a

positive result of .169 (*id.* ¶ 3).  Myshka was scheduled to work a shift beginning at 5:30 p.m. on

October 11, 2007 as a rider (non-driver EMT) (*id.* ¶ 4), was in his New London Fire Department

uniform at the time of his arrest (*id.* ¶ 5), and intended to work his scheduled shift (*id.* ¶ 6).

Before the time of his arrest for driving under the influence that day, Myshka had not notified any

NLFD employee that he would not report to work to perform services as a rider.  (*Id.* ¶ 7.)  The

record contains no indication of when or how the NLFD became aware of each of these acts.

     Myshka called out sick on October 11, 2007 and "misrepresented his whereabouts."[3] (*Id.*

¶ 9.)  On October 12, 2007, the NLFD suspended Myshka without pay.  (Pl. Mem., Ex. 5,

Myshka Aff., Aug. 31, 2009, ¶ 3.)  On November 8, 2007, Myshka's driver's license was

suspended for 120 days and he was disqualified from operating a commercial motor vehicle for

one year.  (Pl. Mem., Ex. 6, Department of Motor Vehicles Decision, Case No. 07008952.)

     Myshka was first diagnosed with "chronic alcoholism" by Julie Selwyn, a counselor at

Lawrence and Memorial Hospital.  (Pl. Resp. to Interrogs. ¶ 10.)  He began treating with her in

2007.  (Pl. Mem., Ex. 5, Myshka Aff., Aug. 31, 2009, ¶ 6.)  A letter signed by Ms. Selwyn

indicates Myshka was seen at the Lawrence and Memorial Hospital Employee Assistance

---

[3]  The NLFD states in its Local Rule 56(a)1 Statement that Myshka called out sick but did not disclose that he had been arrested.  (NLFD Local Rule 56(a)1 Statement ¶ 15.)  To support the assertion, it cites Chief Samul's affidavit and a NLFD logbook that Myshka supposedly attached to his response to the NLFD's requests for production; that logbook, however, was not available to the court for the purposes of this motion.  Thus, I can rely only on the sworn facts contained in Chief Samul's affidavit.

Program for an initial visit on October 18, 2007; he was seen for a second visit on October 25, 2007 and was referred to the CarePlus Program in Groton, CT. (Pl. Mem., Ex. 8, Selwyn letter, Nov. 28, 2007.)

In late January 2008, Myshka entered a guilty plea on the charge of driving under the influence. (Pl. Mem., Ex. 10, Letter from Paul F. Chinigo, Jan. 30, 2008 (indicating guilty plea entered on January 28, 2008); Pl. Resp. to Req. for Admissions. ¶ 8 (indicating guilty plea entered on January 30, 2008).) On March 7, 2008, NLFD terminated Myshka's employment. (Pl. Mem., Ex. 9, City of New London Personnel Action Request, Mar. 7, 2008; R. Samul Aff., July 31, 2009, ¶ 11.)

Ronald Samul, Sr., is the current Chief of the NLFD; he has held that position for twenty-four years. (R. Samul Aff., July 31, 2009, ¶ 2.) He considered Myshka's off-duty arrest on October 11, 2007 and subsequent conviction on January 30, 2008 for driving under the influence to be very serious misconduct justifying his suspension and subsequent termination from employment. (*Id.* ¶ 7.) He considered Myshka's intention to work as a Firefighter/EMT while under the influence of alcohol on or about October 11, 2007 to be in reckless disregard of the safety and well-being of the persons he was hired to protect and his fellow employees, which also justified his suspension and subsequent termination from employment. (*Id.* ¶ 8.) Myshka engaged in misconduct when he misrepresented his whereabouts when he called out sick on October 11, 2007. (*Id.* ¶ 9.) Myshka engaged in misconduct when he attempted to evade responsibility for his conduct, driving under the influence on October 11, 2007, as evidenced by the police report. (*Id.* ¶ 10.) Chief Samul's decision to suspend Myshka from his employment on October 12, 2007 and to subsequently terminate him from employment on March 7, 2008 was

based on the misconduct described.  (*Id.* ¶ 11.)  At the time Chief Samul made the decision to suspend Myshka from employment, he had no notice of Myshka's claimed diagnosis of "chronic alcoholism."  (*Id.* ¶ 12.)  He further avers that his decision to suspend Myshka from his employment on October 12, 2007 and to subsequently terminate him from employment on March 7, 2008 had nothing to do with Myshka's claimed disability.  (*Id.* ¶ 13.)

Myshka treated with Julie Selwyn, M.A., for chronic alcoholism until March 2008.  (Pl. Mem., Ex. 5, Myshka Aff., Aug. 31, 2009 ¶ 6.)  In response to the NLFD's interrogatory asking Myshka to describe any and all major life activities substantially limited by his chronic alcoholism, Myshka replied "none," indicating that no major life activity was substantially limited.  (Pl. Resp.to Interrogs. ¶ 14.)  Myshka's August 31, 2009 affidavit states:

> My chronic alcoholism did affect activities of daily living, most notably, driving and working.  In responding to interrogatories I was responding in the present tense, which at that time was after treatment.  I felt I had no handicaps after treatment.  I have also come to realize that the disease of alcoholism prevents one from seeing the ways in which this disease actually does substantially limit your ability to perform necessary daily activities.

(Pl. Mem., Ex. 5, Myshka Aff., Aug. 31, 2009 ¶ 7.)  Progress Notes from Myshka's treating clinician reflect that he reported continued sobriety as of October 25, 2008, and at subsequent appointments, and stated on April 25, 2008, that he was "still sober," still attended AA meetings, and "likes being sober."  (*Id.* Ex. 8.)  Myshka stated that his now-treated alcoholism does not affect his ability to perform the duties of a firefighter.  (*Id.* Ex. 5, Myshka Aff., Aug. 31, 2009 ¶ 8.)

## II.    Standard of Review

Summary judgment is appropriate when the evidence demonstrates that "there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

When ruling on a summary judgment motion, the court must construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir. 1992) (court is required to "resolve all ambiguities and draw all inferences in favor of the nonmoving party").  When a motion for summary judgment is properly supported by documentary and testimonial evidence, however, the nonmoving party may not rest upon the mere allegations or denials of his pleadings, but must present significant probative evidence to establish a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

"Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir. 1992).  If the nonmoving party submits evidence that is "merely colorable," or is not "significantly probative," summary judgment may be granted.  *Anderson*, 477 U.S. at 249-50.

> The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.  As to

> materiality, the substantive law will identify which facts are material.  Only
> disputes over facts that might affect the outcome of the suit under the
> governing law will properly preclude the entry of summary judgment.
> Factual disputes that are irrelevant or unnecessary will not be counted.

*Id.* at 247-48.  To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party."  *Id.* at 248.

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate.  *Celotex*, 477 U.S. at 322.  In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id.* at 322-23; *accord Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden satisfied if he can point to an absence of evidence to support an essential element of nonmoving party's claim).  In short, if there is no genuine issue of material fact, summary judgment may enter.  *Celotex*, 477 U.S. at 323.

## III.    Discussion

### A.    ADA Claim

The ADA prohibits employers from discriminating "against a qualified individual on the basis of disability."  42 U.S.C. § 12112(a).  Title I of the ADA makes it unlawful for a covered employer to discriminate against a qualified individual with a disability.  42 U.S.C. § 12112(a).  Title I further imposes an obligation on employers to make reasonable accommodation to qualified individuals with disabilities, unless doing so would impose an undue hardship.  42 U.S.C. § 12112(b)(5)(A).

-7-

1.      *Disparate Treatment Claim*

"Claims alleging disability discrimination in violation of the ADA are subject to the burden-shifting analysis originally established by the Supreme Court in *McDonnell-Douglas*." *Sista v. CDC Ixis North America, Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).  "A plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *Id.*; *Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program*, 198 F.3d 68, 72 (2d Cir. 1999).

a.      Prima Facie Case

To establish a prima facie case of disability discrimination under the ADA, Myshka must show that:  "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." *Sista*, 445 F.3d at 169.  There is no dispute that the NLFD is subject to the ADA.

The first issue is whether Myshka is disabled within the meaning of the ADA.  Under the ADA, with respect to an individual, the term "disability" means, "a physical or mental impairment that substantially limits one or more major life activities of such individual" or "a record of such an impairment."  42 U.S.C. § 12102(A)-(B).[4]

"Mere status as an alcoholic or substance abuser does not necessarily imply a 'limitation'

---

[4]  The parties were unable to agree on the "relevant time" for assessing whether Myshka is disabled under the statute.  By its terms, subsection (B) provides coverage for persons who have a record of impairment, even if the person no longer experiences impairment.

under the second part of that definition." *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 47 (2d Cir. 2002) (citations omitted).  To prevail, a recovering drug addict or alcoholic "must demonstrate [not only] that he [or she] was actually addicted to drugs or alcohol in the past, [but also] that this addiction substantially limit[s] one or more of his [or her] major life activities." *Id.*; *Buckley v. Consol. Edison Co. of New York*, 127 F.3d 270, 274 (2d Cir. 1997).

The Supreme Court observed that under the ADA, as in effect on the dates in question, "[T]o be substantially limited . . . , an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002), *superseded by statute* in the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3353 (2008) (provisions of which did not go into effect until after the complained-of acts occurred in this case).  Regulations promulgated under the ADA define "substantially limits" to mean:

> (i) Unable to perform a major life activity that the average person in the general population can perform, or
>
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j).

The NLFD argues that Myshka has not carried his burden of showing a physical or mental impairment that substantially limits one or more major life activities.  It points to Myshka's interrogatory response in which he stated that no major life activities were substantially limited

-9-

by his chronic alcoholism.  (Pl. Resp.to Interrogs. ¶ 14.)  Myshka later disavowed that response,

however, stating in effect that he misunderstood the relevant time frame.  (Pl. Mem. Ex. 5,

Myshka Aff., Aug. 31, 2009 ¶ 7.)

Myshka stated that, after he received treatment in 2007 and 2008, he felt he had "no

handicaps" in the activities of daily living.  (*Id.*)  Nevertheless, his chronic alcoholism qualifies

as a disability if he shows a "record of such an impairment."  42 U.S.C. § 12102(B).

Although Myshka alleged and stated that, in the past, his chronic alcoholism affected his

abilities to work[5] and to drive,  (Pl. Mem., Ex. 5, Myshka Aff., Aug. 31, 2009 ¶ 7), he has not

presented any evidence to show *how* his chronic alcoholism substantially limited those activities.

The affidavit Myshka submitted to oppose the motion for summary judgment stated, "my chronic

alcoholism did affect activities of daily living, most notably, driving and working"; it provides no

examples or descriptions of the alleged effects.  (*Id.*)

When a motion for summary judgment is properly supported by documentary and

testimonial evidence, the nonmoving party may not rest upon the mere allegations or denials of

his pleadings, but must present significant probative evidence to establish a genuine issue of

material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Colon v. Coughlin*, 58 F.3d

---

[5]  Working is clearly a covered activity.  Regulations provide additional details about
what constitutes a substantial limitation when work is the activity alleged:  "The term
substantially limits means significantly restricted in the ability to perform either a class of jobs or
a broad range of jobs in various classes as compared to the average person having comparable
training, skills and abilities."  29 C.F.R. § 1630.2(j)(3) (2009).  The regulations further add that
"[t]he inability to perform a single, particular job does not constitute a substantial limitation in
the major life activity of working."  *Id.*  Although proposed rules would alter these definitions,
those rules had not yet been adopted.  Regulations to Implement the Equal Employment
Provisions of the ADA, 74 Fed. Reg. 48431-01 (proposed Sept. 23, 2009) (to be codified at 29
C.F.R. Pt. 1630).

865, 872 (2d Cir. 1995).  The party opposing summary judgment must "set forth the specific

facts in affidavit or other permissible evidentiary form that demonstrate a genuine issue for trial."

*Gore v. Colonial Penn Ins. Co.*, 335 F. Supp. 2d 296, 302 (D. Conn. 2004) (citation omitted).

Myshka's claim rests on his mere allegations.  He gives no specific facts nor examples of

how he was unable to work or was significantly restricted in his work – he argues only that he

was unable to report to work on the date of his arrest.  Myshka has not produced evidence to

show that being addicted to alcohol, as opposed to the status of being under its influence,

significantly restricted his ability to perform any class of jobs.  Myshka has failed to present

evidence to support that he was significantly restricted in his ability to work and therefore has

failed to prove on this basis that he is disabled within the meaning of the ADA.

Myshka gives only four examples of how he was unable to drive or significantly

restricted in his driving.  Those four examples are his four periods of having a suspended license,

each of which resulted from an impaired driving citation resulting from his being under the

temporary impairment of alcohol intoxication.  These examples do not demonstrate how his

disability gave rise to a substantial limitation on his ability to drive.  Thus, Myshka has also

failed to show on this basis that he is disabled under the ADA.

Because Myshka cannot show he is disabled within the meaning of the ADA, his prima

facie case necessarily fails.  I therefore do not reach the other elements of his ADA disparate

treatment claim.

2.      *Reasonable Accommodation Claim*

Discrimination under the ADA includes "not making reasonable accommodations to the

known physical or mental impairment of an otherwise qualified individual with a disability."  42

U.S.C. § 12112(b)(5)(A); *see also Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir.

2008).  To establish a prima facie case for failure to reasonably accommodate, Myshka must

show that:  (1) he has a disability under the meaning of the ADA; (2) a covered employer had

notice of his disability; (3) with reasonable accommodation, he could have performed the

essential functions of the job at issue; and (4) the employer has refused to make such

accommodations.  *McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92 (2d Cir. 2009)

(citing *Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 184 (2d Cir. 2006)).  NLFD contests all

but the first element of this test.  As the previous section indicates, I find that Myshka has not

carried his burden of producing evidence that he is disabled within the meaning of the ADA.

Accordingly, this claim fails because Myshka has failed to make a prima facie case.

      B.    <u>Rehabilitation Act Claim</u>

Section 504 states that Rehabilitation Act of 1973 provides that "[n]o otherwise qualified

individual with a disability" shall be discharged from federally funded employment "solely by

reason of [his] disability."  29 U.S.C. § 794.

A plaintiff suing under the Rehabilitation Act must first prove a prima facie case, which

has the same elements as the ADA prima facie case.  There is no dispute that the NLFD is

subject to the Rehabilitation Act.  The first issue is whether Myshka is disabled within the

meaning of the Rehabilitation Act.  Under the Rehabilitation Act, 29 U.S.C. § 705(9),

"disability" means "a physical or mental impairment that constitutes or results in a substantial

impediment to employment," or the meaning given "disability" under the ADA, 42 U.S.C. §

12102.  "Individual with a disability" means any individual who "has a physical or mental

impairment which for such individual constitutes or results in a substantial impediment to

employment" and "can benefit in terms of an employment outcome from vocational rehabilitation services provided pursuant to" the Act.  29 U.S.C. § 705(20).

The Rehabilitation Act additionally excludes certain individuals:  "the term 'individual with a disability' does not include any individual who is an alcoholic whose current use of alcohol prevents such individual from performing the duties of the job in question or whose employment, by reason of such current alcohol abuse, would constitute a direct threat to property or the safety of others."  29 U.S.C. § 705(2)(C)(v).  "The relevant time for assessing whether a plaintiff is a 'current substance abuser' is the time of discharge."  *D'Amico v. City of New York*, 132 F.3d 145, 150 (2d Cir. 1998) (citing *Teahan v. Metro-North Commuter R.R. Co.*, 951 F.2d 511, 518 (2d Cir. 1991)).  A court should not use the date of discharge "as a fixed snapshot," but rather, "as a guidepost from which to determine whether the employer acted with justification."  *D'Amico*, 132 F.3d at 150.

As described above in the analysis of Myshka's ADA claim, he cannot make a prima facie case because he has not shown that he is disabled within the meaning of the Rehabilitation Act.  Therefore, his Rehabilitation Act claim fails.

C.    CFEPA Claim

The CFEPA prohibits employers from discriminating against an individual, "except in the case of a bona fide occupational qualification or need" because of the individual's "present or past history of mental disability, mental retardation, learning disability or physical disability, including, but not limited to, blindness."  Conn. Gen. Stat. § 46a-60(a)(1).

This opinion dismisses all of Myshka's federal claims; I decline to exercise supplemental jurisdiction over Myshka's pendent state law claim under the CFEPA.  *See* 28 U.S.C. §

1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725-26 (1966) (holding that, where all federal claims have been dismissed before trial, pendent state claims should be dismissed without prejudice and left for resolution by the state courts); *Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001) (collecting cases).  The CFEPA claim is dismissed without prejudice.

IV.    **Conclusion**

For the reasons described above, the NLFD's motion for summary judgment (**doc. # 19**) is **GRANTED**.  The clerk shall enter judgment and close this case.

It is so ordered.

Dated at Bridgeport, Connecticut, this 15th day of March 2010.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge

-14-